# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | | |
|---|---|---|
| JACK McCOY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.:   3:08-CV-168 |
| v. | ) | (VARLAN/SHIRLEY) |
| | ) | |
| MAHLE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

This civil action is before the Court on Defendant's Motion for Summary Judgment, [Doc. 10], filed by defendant MAHLE, Inc.  In his complaint, plaintiff Jack E. McCoy, proceeding *pro se*, claims that defendant, his former employer, discriminated against him in violation of the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 621, *et seq.* [*see* Doc. 1].  Specifically, plaintiff claims that defendant discharged him because of his age and did not transfer or integrate him into a new position because of his age.  Defendant denies that its decision to discharge plaintiff was in any way based on plaintiff's age.

In the motion for summary judgment [Doc. 10], defendant asserts that it is entitled to judgment as a matter of law under Federal Rule of Civil Procedure 56 as there is no genuine issue of material fact and plaintiff cannot establish a prima facie case of age discrimination. *See* Fed. R. Civ. P. 56.  Defendant also asserts that its decision to discharge plaintiff was due to legitimate, non-discriminatory reasons and plaintiff cannot establish that such reasons

were pretextual [*Id.*].  Plaintiff has filed a response in opposition [Doc. 12], and defendant has filed a reply [Doc. 13].  The matter is ripe for determination.

The Court has carefully reviewed defendant's motion for summary judgment, along with the parties' supporting and opposing briefs.  Accordingly, in light of the entire record, the controlling law, and for the reasons set forth herein, defendant's motion for summary judgment will be **GRANTED**.  In light of this holding, Defendant's Motion to Dismiss for Failure to Prosecute [Doc. 19] will be **DENIED as moot**, defendant's Motion in Limine [Doc. 20] will be **DENIED as moot**, and Plaintiff['s] Motion for Continuance of Trial Date [Doc. 22] will also be **DENIED as moot**.

## I.    Relevant Facts

Defendant, a subsidiary of MAHLE Industries, Inc., manufactures pistons for cars, trucks, and other vehicles [Doc. 10-2, ¶ 4].  Until mid-2007, defendant maintained an Aftermarket Department in Morristown, Tennessee (the "Morristown Aftermarket Department") [*Id.*].  The Morristown Aftermarket Department marketed and sold automotive products, including filter systems [*Id.*, ¶ 5].  Plaintiff was hired as an aftermarket marketing analyst III on April 25, 2005, when he was sixty (60) years old [*Id.*, ¶ 6; Doc. 10-3, pp. 52, 55].  An at-will employee at all times relevant to this action, plaintiff remained in this position until he was discharged in May 2007 [Doc. 10-2, ¶¶ 6, 18-19; Doc. 10-3, p. 60].  Plaintiff was responsible for developing and marketing defendant's filter market, pricing filters, working with customer service representatives about pricing and product information,

2

and developing catalog materials [Doc. 10-2, ¶ 4; Doc. 10-3, pp. 35, 95-97; Doc. 10-4, ¶¶ 7, 9].

Except for the first few months of plaintiff's employment, Enrison Ladeia ("Ladeia"), the director of aftermarket, was plaintiff's supervisor [Doc. 10-3, pp. 101-03; Doc. 10-4, ¶ 7]. All employees in the Morristown Aftermarket Department reported to Ladeia and Ladeia was responsible for the department's performance [Doc. 10-3, p. 103; Doc. 10-4, ¶ 4]. Ladeia conducted two performance evaluations of plaintiff, one in 2005 (the "2005 Evaluation") and one in 2006 (the "2006 Evaluation") [Doc. 10-3, pp. 103-11; Doc. 10-4, ¶¶ 9-10].

The 2005 Evaluation indicates that plaintiff was rated "Marginal-Needs Improvement" in three areas of his work performance: being proactive, seeking to improve relationships, and working to continuously improve his job performance [*see* Doc. 10-3, pp. 105, 210; Doc. 10-4, ¶ 11]. In the majority of plaintiff's job performance areas evaluated in 2005, plaintiff was rated as "Good." [*see* Doc. 10-3, p. 210]. The 2005 Evaluation also indicates that Ladeia assigned plaintiff additional duties and responsibilities in filter sales [*see* Doc. 10-3, pp. 109, 211; Doc. 10-4, ¶ 9]. Plaintiff testified in his deposition that Ladeia's evaluation of his job performance in 2005 was fair and that he has no proof of any age discrimination with respect to the 2005 Evaluation [Doc. 10-3, p. 108].

The 2006 Evaluation indicates that plaintiff was "Marginal-Needs Improvement" in seven areas, including: being proactive, seeking to improve relationships, being accepted by peers, and working continuously to improve performance on the job [*see* Doc. 10-3, pp. 113,

214; Doc. 10-4, ¶ 11]. Similar to the 2005 Evaluation, plaintiff was rated "Good" in the majority of the his job performance areas evaluated [Doc. 10-3, p. 214]. The 2006 Evaluation also indicates that plaintiff's sales were down 7% [Doc. 10-3, pp. 118, 121, 215; Doc. 10-4, ¶ 11]. Plaintiff testified in his deposition that Ladeia treated him the same as the other employees in the Morristown Aftermarket Department [Doc. 10-2, p. 110], but that in 2006, Ladeia's attitude towards him changed following a meeting plaintiff attended that Ladeia was not invited to attend [*Id.*, pp. 126-27]. Plaintiff asserts that this meeting "colored" Ladeia's attitude towards him [*Id.*, pp. 129-30].[1]

In March 2007, defendant acquired Dana Corporation's Engine Parts Group and Aftermarket Department, an entity known as "Clevite," located in Ann Arbor, Michigan [Doc. 10-2, ¶ 7; Doc. 10-3, p. 136]. Clevite was acquired under the corporation of MAHLE Clevite, Inc. ("MAHLE Clevite"), a separate and distinct corporate entity from defendant [Doc. 10-3, pp. 130-31; Doc. 10-2, ¶ 7]. In April 2007, several meetings were held in Ann Arbor at which the integration of Clevite and the Morristown Aftermarket Department was discussed [Doc. 10-3, p. 132; Doc. 10-2, ¶ 15]. Plaintiff attended these meetings [Doc. 10-3, pp. 132-34]. Jesse Jones ("Jones"), director of marketing at Clevite, was also present [*Id.*; Doc. 10-5]. At these meetings, plaintiff delivered a presentation on defendant's general

---

[1]Plaintiff testified that this meeting also "colored" Jesse Jones's ("Jones") attitude toward him [Doc. 10-3, pp. 129-30]. At the time of this meeting, Jones was not employed by defendant but was employed as director of marketing at Clevite [*Id.*, pp. 130-31; *see* Doc. 10-5]. Jones would later become director and manager of marketing for the MAHLE Clevite Aftermarket Department, the entity that was formed upon defendant's acquisition of Clevite and the integration of the Morristown Aftermarket Department with Dana Corporation's Clevite Aftermarket Department.

4

business structure [Doc. 12, ¶ 3]. Plaintiff asserts that Jones "complimented [plaintiff]" on the presentation and "was able to observe the interaction with [plaintiff's] peers." [*Id.*]. Defendant also asserts that Jones met with plaintiff at these meetings, observed plaintiff's participation and interactions, and was of the opinion that plaintiff was "overly confrontational." [Doc. 10-3, pp. 134-36; Doc. 10-5, ¶ 5; Doc. 10-2, ¶ 14].

On or about April 12 through April 13, 2007, defendant sent plaintiff information regarding defendant's intent to integrate Clevite with the Morristown Aftermarket Department, forming a new MAHLE Clevite Aftermarket Department, to be located in Ann Arbor [Doc. 10-2, ¶ 8; Doc. 10-3, pp. 137-41; Doc. 10-4, ¶ 15]. Defendant asserts, and plaintiff does not dispute, that this integration information informed plaintiff that the Morristown Aftermarket Department and all positions within it would be eliminated [Doc. 10-3, pp. 137-41; Doc. 10-2, ¶ 8; Doc. 10-4, ¶ 15]. Further, defendant asserts, and plaintiff does not dispute, that plaintiff was provided a Power Point presentation explaining "the business reasons for the decision to integrate [the Morristown Aftermarket Department's] duties and responsibilities to [the new MAHLE Clevite Aftermarket Department]" [Doc. 10-2, ¶ 9; Doc. 10-3, pp. 137-38]. The Power Point presentation also addressed future employment opportunities for former employees of the Morristown Aftermarket Department [Doc. 10-2, ¶ 9]. These future employment opportunities included sixty-four salaried job openings available to all former employees of the Morristown Aftermarket Department, including plaintiff, and the employees could bid on these jobs through defendant's Salary

5

Pre-Bid Procedure [Doc. 10-3, pp. 142-43; Doc. 10-2, ¶ 10].[2]  As part of the Salary Pre-Bid Procedure, the employees were required to sign a Pre-Bid Log [Doc. 10-2, ¶ 10; Doc. 10-6, ¶ 5].  It is undisputed that plaintiff did not sign the Pre-Bid Log and did not pursue any of these sixty-four positions [Doc. 10-3, pp. 156-57; Doc. 10-6, ¶ 5].  Plaintiff asserts that he did not do so because he was waiting to see what was developing "so [he] could make an informed decision." [Doc. 10-3, p. 156].

It is undisputed that prior to or after this April 2007 presentation on the integration, no one with defendant or MAHLE Clevite ever told plaintiff he would be integrated and relocated to the new MAHLE Clevite Aftermarket Department in Ann Arbor [Doc. 10-3, p. 133-34; Doc. 10-2, ¶ 13].  However, plaintiff asserts that "implied statements" by members of defendant's human resources department lead him to believe his filter team at the Morristown Aftermarket Department would remain together and, because of these implied statements, plaintiff asserts that he "did not feel compelled to hurry and make a rash decision regarding posting for other positions." [Doc. 12, ¶¶ 5-6].  In addition to the sixty-four job openings, Ted Comfort ("Comfort"), defendant's manager of human resources, proposed that plaintiff consider two job openings with defendant in Morristown: Account Manager–Sales and Account Manager–International Sales [Doc. 10-3, pp. 158-59; Doc. 10-6, ¶ 6].  Plaintiff

---

[2]The integration information was presented on April 13, 2007 in Morristown during a meeting of the employee's of the Morristown Aftermarket Department [Doc. 10-3, p. 136; Doc. 10-4, ¶ 15; Doc. 10-6, ¶ 4].  Plaintiff did not attend this meeting because plaintiff was in Ann Arbor [Doc. 10-3, pp. 136-38].  However, plaintiff received the information shared at the meeting and the information was also emailed to all employees of the Morristown Aftermark Department on April 13, 2007 [*Id.*; Doc. 10-4, ¶ 15].

6

asserts that he did not pursue these jobs because the jobs were not in his area of expertise and did not involve filters [Doc. 10-3, p. 159; Doc. 10-6, ¶ 6].

In 2007, defendant integrated Clevite with the Morristown Aftermarket Department, thus forming the new MAHLE Clevite Aftermarket Department, an entity under MAHLE Clevite and separate from defendant [Doc. 10-2, ¶ 8; Doc. 10-3, pp. 140-41; Doc. 10-4, ¶ 15]. As part of this integration, all positions at the Morristown Aftermarket Department, including plaintiff's, were eliminated [Doc. 10-3, p. 141; Doc. 2, ¶ 8].

Defendant asserts that plaintiff was one of two employees at the Morristown Aftermarket Department who were considered for integration to the new MAHLE Clevite Aftermarket Department for a filter sales and marketing position, the other employee being Bob Poye ("Poye"), senior sales coordinator at the Morristown Aftermarket Department [Doc. 10-2, ¶ 11; Doc. 10-4, ¶ 19]. Defendant asserts that Poye was chosen for the integrated position because Poye had higher ratings on his employee performance evaluations,[3] because Poye's contributions and job performance ratings were higher ranked than plaintiff's, and because Jones, the director of marketing for MAHLE Clevite, now the director and manager of marketing for the new MAHLE Clevite Aftermarket Department, regarded Poye as more qualified than plaintiff after observing both employees at work [Doc. 10-2, ¶¶ 11-14; Doc. 10-4, ¶¶ 19, 20; Doc. 10-5, ¶¶ 5, 6]. Specifically, Jones stated that after observing plaintiff

---

[3]Poye's 2006 performance evaluation rated his job performance "Above Average," with eleven "Above-Average Ratings," and no "Marginal-Needs" ratings in any of the job performance areas evaluated [Doc. 10-2, ¶ 11].

at the April 2007 meetings in Ann Arbor, he was "not impressed with [plaintiff's] participation in the business discussions" and determined that he "was not interested in integrating [plaintiff]" because he believed plaintiff was "overly confrontational." [Doc. 10-5, ¶¶ 5-6; Doc. 10-2, ¶ 14; Doc. 10-4, ¶ 20]. Accordingly, Jones and Ladeia, who had been integrated to MAHLE Clevite, offered the position to Poye [Doc. 10-5, ¶ 6; Doc. 10-4, ¶¶ 19-20; Doc. 10-2, ¶ 14]. Beyond the "overly confrontational issue," plaintiff agrees that he does not have any proof of any other reason as to why Jones did not support plaintiff's integration [Doc. 10-3, p. 135].

Because plaintiff was no longer a candidate for integration to MAHLE Clevite, because plaintiff had not signed the Pre-Bid log to apply for one of the sixty-four positions, and because plaintiff had not considered the other two salaried positions offered to him, Dennis Wheeler ("Wheeler"), defendant's director of human resources, made the decision to discharge plaintiff due to lack of work on May 14, 2007 [Doc. 10-2, ¶ 17; Doc. 10-3, p. 162; Doc. 10-6, ¶ 7]. In response, plaintiff replied that "[t]his is general reduction in force; not lack of work." [Doc. 10-6, ¶ 7]. Following the discharge, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") alleging age discrimination [see Doc. 10-1]. On February 13, 2008, the EEOC dismissed plaintiff's charge of age discrimination, finding no violation of the ADEA [Id.].[4] On April 30, 2008,

---

[4]Plaintiff asserts that he was told by the EEOC that he "may have an actionable case upon EEOC investigation" and that the EEOC found "circumstantial probable cause for Age discrimination" and stated plaintiff had the right to sue [Doc. 12, ¶ 6]. However, given defendant's submission of the EEOC dismissal and notice of rights, filed as an exhibit to defendant's motion for summary judgment [see Doc. 10-1], the Court must conclude that plaintiff's assertions, not backed up by any supporting documentation, are in error.

plaintiff filed his complaint, alleging that defendant had discriminated against him based on age [*see* Doc. 1].

## II.     Analysis

As an initial matter, the Court notes that *pro se* pleadings are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Williams v. Browman*, 981 F.2d 901, 903 (6th Cir. 1992) (recognizing the general rule that the pleadings of *pro se* plaintiffs should be construed more liberally than pleadings drafted by lawyers). Accordingly, the Court will view plaintiff's *pro se* complaint pursuant to this less stringent standard.

### A.     Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). Accordingly, the court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The

genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the fact finder. *Anderson*, 477 U.S. at 249. The judge does not weigh the evidence, judge the credibility of witnesses, nor determine the truth of the matter. *Id.* Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

### B. An Age Discrimination Claim Under the ADEA

In his complaint, plaintiff alleges a general claim of age discrimination under the ADEA, claiming that he was discharged "due to being the oldest member" of defendant's Morristown Aftermarket Department and because he was "the only member of the ten salaried Sales and Marketing staff that was terminated" [Doc. 1, ¶ 4]. Plaintiff also asserts that the reason defendant gave for the discharge, that plaintiff was "[r]eleased due to lack of work," was "not accurate" because such discharge was due instead to a reduction in force [*Id.*; Doc. 10-6, ¶ 7]. Defendant denies that plaintiff's age was a factor or a consideration in its decision to discharge plaintiff and asserts that it based its decision on legitimate, non-discriminatory grounds, namely, lack of work.

10

The ADEA provides that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Plaintiff has alleged that defendant's decision to discharge him and eliminate his position was motivated not by a business decision, but because of age discrimination [*see* Doc. 1].

### C. A Prima Facie Case Under the ADEA

A plaintiff may establish a prima facie case of age discrimination by presenting either direct or indirect evidence of discrimination. *See Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir. 2008). "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc) (internal quotation marks omitted). In other words, direct evidence proves the occurrence of discrimination without requiring further inferences. *Reeves v. Swift Trans. Co.*, 446 F.3d 637, 640 (6th Cir. 2006).

In this case, defendant asserts that plaintiff does not have any direct evidence of age discrimination because plaintiff acknowledged that he does not have any "smoking gun" to support his claim [Doc. 10-3, p. 44]. Plaintiff also stated, in his response to defendant's motion for summary judgment, that "[a]ge discrimination claims are many times based on circumstantial evidence." [*see* Doc. 12, p. 1]. Given these assertions by plaintiff, and after the Court's review of the affidavits, deposition, and exhibits submitted by the parties, the

11

Court agrees that plaintiff has not provided direct evidence of discrimination. Accordingly, plaintiff must establish his claim of age discrimination based on circumstantial, or indirect evidence.

"Circumstantial evidence . . . is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *See Wexler*, 317 F.3d at 570. Recently, in *Gross v. FBL Financial Servs., Inc.*, the United States Supreme Court emphasized that with both direct and circumstantial evidence, the burden of persuasion remains on the ADEA plaintiff to demonstrate "that age was the 'but-for' cause of their employer's adverse action." *Gross*, — U.S. —, 129 S.Ct. 2343, 2351 n.4 (2009).

In the United States Court of Appeals for the Sixth Circuit, the *McDonnell Douglas* burden-shifting framework is used to analyze ADEA claims based on circumstantial evidence. *See Geiger v. Tower Automotive*, 579 F.3d 614, 622 (6th Cir. 2009); *see also Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[5] To establish a prima facie case of age discrimination by

---

[5]While *Gross* specifically rejected the *McDonnell Douglas* burden-shifting framework for claims involving direct evidence of discrimination under the ADEA, the *Gross* majority noted, in a footnote, that it "has not definitively decided whether the evidentiary framework of [*McDonnell Douglas*], utilized in Title II cases is appropriate in the ADEA context." *Gross*, 129 S.Ct at 2349 n.2. The Sixth Circuit has long utilized this framework for analyzing claims of age discrimination based on circumstantial evidence under the ADEA. *See, e.g., Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (citing *Laugesen v. Anaconda Co.*, 510 F.2d 307, 317 (6th Cir. 1975)). The *McDonnell Douglas* framework thus remains applicable law in this Circuit. Other circuits who have addressed the issue are in accordance. *See Milby v. Greater Phil. Health Action*, No. 08-2865, 2009 WL 2219226, at *1 (3rd Cir. July 27, 2009) (continuing to apply *McDonnell Douglas* because the plaintiff "does not dispute" its application); *Martino v. MCI Commc'ns Servs., Inc.,*, 574 F.3d 447, 449 (7th Cir. 2009) (applying *McDonnell Douglas* without discussion).

relying upon circumstantial evidence, a plaintiff must establish four elements: (1) that he or she was at least forty (40) years old at the time of his or her discharge; (2) that he or she was discharged; (3) that he or she was qualified for the position held; and (4) that he or she was replaced by someone outside the protected class. *See Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 394 (6th Cir. 2008) (citing *Minadeo v. ICI Paints*, 398 F.3d 751, 764 (6th Cir. 2005)). Where the employer eliminates an employee's position pursuant to a reduction in force or a reorganization, the Sixth Circuit has modified the fourth element of the prima facie test to require the plaintiff to provide "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes v. GenCorp.*, 896 F.2d 1457, 1465 (6th Cir. 1990); *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998); *see also Geiger*, 579 F.3d at 623.

Thus, in this case, the Court must first address the initial question of whether defendant eliminated plaintiff in the context of a work force reduction. "A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company." *Barnes*, 896 F.2d at 1465. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. *Id.* A person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. *Id.* Rather, a person is only replaced when another employee is hired or reassigned to perform the plaintiff's duties. *Id.; see also Wilson v. Ohio*, 178 Fed. Appx. 457, 465 (6th Cir. 2006).

13

As part of the 2007 integration of the Morristown Aftermarket Department with Clevite in Ann Arbor, forming the new MAHLE Clevite Aftermarket Department, defendant asserts that all positions at the Morristown Aftermarket Department were eliminated. Thus, defendant asserts, the duties plaintiff performed in his position as an aftermarket marketing analyst III at the Morristown Aftermarket Department were integrated and absorbed by the new MAHLE Clevite Aftermarket Department in Ann Arbor. Plaintiff acknowledged as such in his deposition [*see* Doc. 10-3, pp. 165-66].

Plaintiff states in his response to defendant's motion for summary judgment that "[t]hree different people assumed [plaintiff's] responsibilities . . . . Only one of the three had filtration experience." [*See* Doc. 12, p. 4]. Defendant agrees and states that employees at the new MAHLE Clevite Aftermarket Department absorbed plaintiff's duties as follows: (1) Jones, director of marketing for MAHLE Clevite absorbed plaintiff's marketing duties; (2) Poye, who was integrated into MAHLE Clevite, assumed co-man sales responsibilities; and (3) Ron Friskney ("Friskney"), an employee with MAHLE Clevite prior to the integration and never an employee with defendant, assumed product pricing responsibilities [Doc. 10-5, ¶ 9; *see* Doc. 11, p. 12]. Thus, plaintiff's duties were "redistributed" among these three existing employees as part of the 2007 integration. *See Barnes*, 896 F.2d at 1465. This falls squarely within the test for whether an employee was "replaced" as articulated in *Barnes*.

Plaintiff has not argued that he was replaced by a specific person or persons, only that employees who were already employed with defendant or MAHLE Clevite assumed and absorbed his duties following the integration and that such employees lacked plaintiff's

14

filtration experience. As to Poye, the one former employee of defendant who assumed some of plaintiff's responsibilities, plaintiff stated that, to his knowledge, Poye was qualified for the position to which he was integrated and plaintiff should not have been integrated before him [Doc. 10-3; pp. 150, 171-72].[6] Jones, the director of marketing at MAHLE Clevite who made the decision to integrate Poye over plaintiff, stated that this decision was "[b]ased on Poye's and [plaintiff's] previous job performance in MAHLE's Aftermarket, and based on my own experiences and observation of each candidate in business meetings" [Doc. 10-5, ¶ 6]. Further, plaintiff has not alleged that Jones' decision was based on age [*see* Doc. 10-3, p. 135]. To the extent Ladeia was involved in the decision to integrate Poye instead of plaintiff, plaintiff has not alleged that any decision or conduct by Ladeia was based on improper considerations of plaintiff's age. Thus, given the facts surrounding Poye's integration and the fact that Poye was an existing employee of defendant, and a new employee of MAHLE Clevite, Poye cannot be said to have "replaced" plaintiff. Accordingly, the Court concludes that plaintiff was discharged as part of a reduction in force and his responsibilities were redistributed to existing employees. *See Barnes*, 896 F.2d at 1465.

Because his discharge arose from a work force reduction, plaintiff must meet a heightened standard to establish a prima facie case. *See Asmo v. Keane, Inc.*, 471 F.3d 588,

---

[6]Although Ladeia did not assume plaintiff's responsibilities, plaintiff stated in his deposition that Ladeia, among others, should have been integrated before him, given his respective position of employment at MAHLE Clevite [Doc. 10-3, pp. 87-90, 149, 150, 172].

592-93 (6th Cir. 2006). This heightened standard requires a plaintiff to provide "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes*, 896 F.2d at 1465. "'The guiding principle [in a workforce reduction case] is that the evidence must be sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of age.'" *Gragg v. Somerset Tech. Coll.*, 373 F.3d 763, 767-68 (6th Cir. 2004) (quoting *Barnes*, 896 F.2d at 1466).

In this case, it is undisputed that plaintiff has presented evidence to establish the first three elements of the *McDonnell Douglas* test. First, plaintiff was over the age of 40 when he was discharged and thus within the protected class of persons under the ADEA. *See, e.g., Barnes*, 896 F.2d at 1465. Second, plaintiff was discharged from his employment with defendant. Third, plaintiff was qualified to be an aftermarket marketing analyst III because he had already served in this position for a number of years and had previously received positive performance evaluations from his supervisor. However, plaintiff must still prove the fourth element of his prima facie case.

### D. Additional, Direct, Circumstantial, or Statistical Evidence Tending to Indicate that Plaintiff was Discharged for Impermissible Reasons

In sum, plaintiff offers the following proof as circumstantial evidence of discrimination against him: (1) plaintiff was the only filter team member not employed by the MAHLE Clevite Aftermarket Department; (2) the decision not to integrate plaintiff was because the cost of moving plaintiff to Ann Arbor would be costly as plaintiff was the oldest

16

person in the filter group, highly compensated, and because plaintiff was close to retirement; (3) plaintiff was treated differently than other employees despite "implied statements" by defendant's employees that the filter team from the Morristown Aftermarket Department would be kept together; and finally, (4) because three different people assumed plaintiff's responsibilities.

First, plaintiff states that John Enright ("Enright"), Poye, and himself comprised the members of the filter team at the Morristown Aftermarket Department and that plaintiff was the only member of this team not employed by the MAHLE Clevite Aftermarket Department. However, following the integration, none of the members of the filter team were employed by defendant because defendant is a separate corporate entity from MAHLE Clevite, a fact recognized by plaintiff [Doc. 10-3, p. 131]. Thus, the decision to integrate Poye and Enright was a decision by MAHLE Clevite, not defendant. Regardless of the separate nature of the two entities, both Poye and Enright were integrated over plaintiff for non-discriminatory reasons. Poye was integrated because he was determined to be more qualified than plaintiff and Enright was integrated into MAHLE Clevite because he performed the product development manager position, a position plaintiff did not perform [*see* Doc. 10-3, pp. 79-80, 92-93]. Further, plaintiff has not disputed that both Enright and Poye were qualified for their positions and has also stated that he should not have been integrated into MAHLE Clevite before either of these two men [*Id.*, p. 150].[7] Finally, beyond the statements in his complaint

_____

[7]In his deposition, plaintiff responded "[a]h, no" to the question,"[a]re you claiming – is there any one individual you're claiming you should have been integrated before they were?" [Doc. 10-3, p. 150].

17

and the assertions in his response to defendant's motion for summary judgment, plaintiff has not produced any evidence, circumstantial or otherwise, that these integration decisions were based on improper age considerations. The fact that plaintiff was not integrated into the MAHLE Clevite Aftermarket Department cannot, in and of itself, satisfy the fourth element of plaintiff's prima facie case.

Second, plaintiff has stated that he was not integrated into the new MAHLE Clevite Aftermarket Department because he was the oldest member of the filter group and because he was close to retirement. However, as stated above, the MAHLE Clevite Aftermarket Department is not a part of defendant but a part of MAHLE Clevite, a separate and distinct entity. Further, defendant has asserted, and plaintiff has not disputed, that plaintiff was given the opportunity to apply for other positions with defendant following the 2007 integration [Doc. 10-3, pp. 156-57, 159; Doc. 10-6, ¶¶ 5-6]. Plaintiff asserts that he did not pursue these job opportunities because of "implied statements" by employees of defendant's human resources department that the filter team would be kept together and because plaintiff was waiting to see what developed [Doc. 12, p. 5, ¶¶ 5-6]. Defendant denies any such implied statements and, without more, the Court cannot conclude that plaintiff's allegation satisfies the fourth element of the prima facie test. Moreover, such "implied statements" do not provide circumstantial evidence of age discrimination because no other evidence supports such statements.

Third, plaintiff has alleged that he was treated differently than others. However, this is a direct contradiction of what plaintiff stated in his deposition, that he had "no knowledge

18

of anyone being treated better or worse than I was." [Doc. 10-3, p. 169]. Moreover, plaintiff has not disputed that he, along with the other employees of the Morristown Aftermarket Department, were told of the Salary Pre-Bid procedure and the sixty-four available job positions [Doc. 10-3, p. 134]. It is undisputed that plaintiff did not sign a Pre-Bid log to be eligible to bid for these positions [Doc. 10-3, pp. 156-57]. Also, it is undisputed that plaintiff was urged to consider two available job positions with defendant in Morristown and that plaintiff did not consider these positions [*Id.*, p. 159]. As such, the Court does not find any circumstantial evidence that plaintiff was treated differently than others based on his age and thus, this also cannot satisfy the fourth element of plaintiff's prima facie case.

Fourth, as stated above in the Court's discussion of whether defendant's discharge of plaintiff was pursuant to a work force reduction, plaintiff's claim that three other employees assumed his duties and responsibilities does not support plaintiff's claim of age discrimination. Two of these employees were prior employees of MAHLE Clevite and never employed by defendant and the third, Poye, was an employee of defendant who was integrated to MAHLE Clevite and plaintiff does not dispute that this integration was because Poye was qualified. Thus, this is a situation where plaintiff's duties were distributed among existing employees. This, combined with the lack of any evidence, circumstantial or otherwise, that defendant's discharge of plaintiff was decision was based on age, cannot support the fourth element of plaintiff's prima facie case.

Thus, in light of the above, and because plaintiff has failed to provide additional evidence that he was discharged on account of his age, as required by the heightened

standard for work force reduction cases, *Barnes*, 896 F.2d at 1465, plaintiff has not established a prima facie case for age discrimination.

### E.  Defendant's Legitimate, Non-Discriminatory Reason

Furthermore, even if the Court were to assume that the allegations presented by plaintiff met the heightened standard and established a prima facie case for age discrimination, plaintiff cannot establish that defendant's stated reason—lack of work—was pretext and that age was the real reason for plaintiff's discharge.  Plaintiff disputed defendant's asserted reason, stating that the real reason was "due to a reduction in force." [Doc. 10-3, p. 163].  However, this assertion does not indicate that the decision was based on age and does not support plaintiff's claim for age discrimination.  Moreover, a plaintiff's dispute, without more, of the facts underlying a defendant employer's legitimate business reason for discharging a plaintiff employee is not sufficient to establish a plaintiff's burden of proving pretext.  *See Irvin v. Airco Carbide*, 837 F.2d 724, 726 (6th Cir. 1987).

Once a defendant has made an appropriate showing of pretext, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason was a pretext for discrimination.  *Texas Dept. of Cmty. Affairs*, 450 U.S. at 252-55.  To establish that a defendant's reason is pretext, a plaintiff must generally show: (1) that the proffered reason has no basis in fact; (2) the reason did not actually motivate the defendant's challenged conduct; or (3) the reason was insufficient to warrant the challenged conduct.  *Wexler*, 317 F.3d at 576 (internal quotations and citation omitted).

The record in this case indicates that all the positions at the Morristown Aftermarket Department were eliminated due to the integration of Clevite and the formation the new MAHLE Clevite Aftermarket Department. The record also indicates that plaintiff was offered and refused to consider the opportunity to apply for continued employment with defendant. Such evidence indicates that defendant's reason for discharging plaintiff was legitimate and non-discriminatory and plaintiff has provided no other evidence to counter such determination. Moreover, the evidence proffered by defendant, and uncontradicted by plaintiff, indicates that MAHLE Clevite chose Poye, the more qualified employee who performed the same duties as plaintiff, for integration into the new MAHLE Clevite Aftermarket Department because Poye's work performance evaluations were higher and because Jones believed that Poye was better qualified and a better fit for the position.[8] Finally, plaintiff has not claimed that he should have been integrated before any of the other employees [Doc. 10-3, pp. 149-50]. Accordingly, and because plaintiff has failed to produce sufficient evidence that defendant's stated reason—lack of work—was a "mere pretext" for age discrimination, plaintiff's claim for age discrimination cannot stand. *See Ercegovich*, 154 F.3d at 350 (stating that the plaintiff has the burden of production for showing that "the employer's nondiscriminatory explanation is a mere pretext for age discrimination").

---

[8]As has been stated previously, the decision to integrate Poye was not a decision made by defendant but a decision made by MAHLE Clevite, a separate corporate entity. This too adds to the Court's determination that plaintiff has not proven that defendant's legitimate, non-discriminatory reason was pretextual.

### III.    Conclusion

For the foregoing reasons, defendant MAHLE, Inc.'s Motion for Summary Judgment [Doc. 10] will be **GRANTED** and plaintiff Jack E. McCoy's claim for age discrimination under the ADEA will be **DISMISSED with prejudice**. In light of this holding, Defendant's Motion to Dismiss for Failure to Prosecute [Doc. 19] will be **DENIED as moot**, defendant's Motion in Limine [Doc. 20] will be **DENIED as moot**, and Plaintiff['s] Motion for Continuance of Trial Date [Doc. 22] will also be **DENIED as moot**. An appropriate order will be entered. The Clerk of Court is **DIRECTED** to close this case.

ORDER ACCORDINGLY.


s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE